UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD B. GOGAN, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:14-CV-1902 (CEJ) |
| JEFFREY SILER, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion for summary judgment. Plaintiff has filed a response in opposition and the issues are fully briefed.

On March 20, 2012, plaintiff Edward Gogan was taken to the St. Louis County Justice Center after he was arrested in Clayton on an outstanding warrant. In this action brought pursuant to 42 U.S.C. § 1983, plaintiff alleges that St. Louis County corrections officers Jeffrey Siler, Cranston Jones, and James Lively severely beat him while he was handcuffed with his hands behind his back. He was transported by ambulance to the emergency room at SSM St. Mary's Health Center, where he was admitted for treatment of two broken ribs, a collapsed lung, and a perforated eardrum. He asserts a § 1983 claim of excessive force in violation of his rights under the Fourth Amendment and a state law claim of assault and battery.

I.  **Background**

The parties present widely divergent versions of the facts, beginning before plaintiff arrived at the Justice Center. The Court sets out abbreviated statements of

the parties' versions of events. In doing so, the Court expresses no opinion regarding the credibility of the testimony.

### A. Plaintiff's Version

Plaintiff Edward Gogan spent the evening of March 19, 2012, drinking beer at a bar in Clayton, Missouri. Plaintiff's Deposition [Doc. # 56-1 at 9]. After the bar closed, he began walking toward home. A Clayton police officer in a patrol car stopped him and asked for identification. After checking his state ID, the officer informed plaintiff that there was an outstanding warrant from Jefferson County for failure to pay child support and that he was under arrest. Plaintiff was handcuffed with his hands behind his back and placed in the back of the patrol car. Id. at 10.

The Clayton police officer transported plaintiff to the St. Louis County Justice Center to be processed and held for transfer to Jefferson County. Once inside the Justice Center, the officer directed plaintiff to take a seat in the booking hallway. Plaintiff complied. Id. at 13. Approximately five minutes later, a Justice Center guard escorted plaintiff to a bench in front of the nurse's station and told him to wait for the nurse to call his name. Plaintiff testified that the guard stood to the right of him, at a distance of a few feet. Plaintiff described the guard as a white man in his late fifties or early sixties, with graying hair. Id. at 13, 15. When pressed for further details, plaintiff stated that he had not been paying much attention to him but he thought that the guard was under 6 feet tall and weighed about 180 or 190 pounds. In any event, he "seemed like a bigger fellow" than plaintiff. Id. at 15.

Plaintiff subsequently identified defendant Jeffrey Siler as the guard in question and the Court will refer to him as Siler.[1]

Plaintiff stood up when he heard his name called. He testified that Siler hauled him to his feet and told him to "move his ass." Plaintiff swore at him. Plaintiff testified that he took a half step before he was knocked unconscious by a blow to his left ear from behind him. When he regained consciousness he was in the hospital. Id. at 16. He was unable to describe what happened to him after he lost consciousness. Id. at 16, 17. He had no memories of interacting with defendants Jones and Lively. Id.

Plaintiff presented to the emergency department with a collapsed lung, fractured ribs on both the left and right, and a punctured ear drum. [Doc. # 61-2]. He rated his pain at level 10 on a 10-point scale. He was described as intoxicated, spitting, and screaming profanities. Id.

**B. Defendants' Version**

Defendant Jeffrey Siler held the rank of captain and was the intake supervisor on March 20, 2012. Siler Deposition [Doc. # 56-2 at 4]. He testified that he was present when two Clayton police officers brought plaintiff to the Justice Center booking area in handcuffs, holding him by both arms. He described plaintiff as "very drunk, very belligerent" and "acting out verbally." Defendant Siler asked the Clayton police officers to bring plaintiff to the counter where nurse Gerard Kearney was ready to complete an intake evaluation. Plaintiff responded to Kearney's questions with profanities. Nurse Kearney determined that plaintiff was

---

[1] Plaintiff was deposed on July 7, 2016. Defendant Jeffrey Siler was deposed on July 21, 2016. In an affidavit dated October 4, 2016, plaintiff states that when he attended Siler's deposition he recognized him as the guard who escorted him to the bench in front of the nurse's station. Plaintiff's Affidavit, ¶ 5 [Doc. # 61-1].

3

fit for confinement. Id. at 6-7. Defendant Siler testified that he attempted to replace the handcuffs the Clayton police officers had used to restrain plaintiff with Justice Center restraints. Id. at 8. Plaintiff struggled during the switch so defendant Siler "gave the instruction to place [him] in the prone position to limit his ability to pull away from us or cause harm to us or anyone else." Id. at 10. Once plaintiff was on the floor, he kicked defendant Siler in the stomach "near the private area." Id. Defendant Siler grabbed plaintiff's foot and leg, put it back on the ground, and put his knees on plaintiff's back to hold him down. Defendants Lively and Jones pinned plaintiff's legs and defendant Siler was able to complete the exchange of the handcuffs. Id. at 11; 13. Plaintiff was then placed in a restraint chair. Id. at 8; 12. Nurse Kearney examined plaintiff, who was moaning and had blood coming from one ear.[2] Kearney Deposition [Doc. # 56-5 at 7-8]. Kearney told the defendants that plaintiff needed to be transported to the emergency room. Id. When asked how he thought plaintiff sustained his injuries, defendant Siler noted that plaintiff had been found by the Clayton police at the side of the road and opined that plaintiff was injured before coming to the Justice Center. [Doc. # 56-2 at 10].

On March 20, 2012, defendant Siler was 42 years old and weighed 375 pounds. Siler Affidavit [Doc. # 56-6]. Defendant Jones is an African-American male

---

[2] There is conflicting testimony regarding whether plaintiff was placed in a "spit hood" and, if so, when in the process. See Plaintiff's Dep. [Doc. # 56-1 at 14-15] (denying he has ever been placed in spit hood); Cranston Jones Deposition [Doc. # 56-3 at 7] (spit hood was called for when plaintiff was placed in restraint chair but the nurse prevented use because there was blood coming from plaintiff's ear); Kearney Dep. [Doc. # 56-5 at 20] (testifying that medical records state plaintiff was wearing spit hood when he arrived in law enforcement lobby); Siler Dep. [Doc. # 56-2 at 18) (testifying hood placed on plaintiff before he went to nurse).

and was 28 years old at the time of this event. [Doc. # 56-7]. Defendant Lively was 42 years old, bald, and weighed 285 pounds.[3]

## II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

## III. Discussion

---

[3] The record does not state the race of either Siler or Lively, though plaintiff identified Siler as the white man who hit him.

5

### A. Excessive Force

The Fourth Amendment's prohibition against unreasonable searches and seizures includes the right to be free from law enforcement officers using excessive force in effectuating an arrest.[4] Graham v. Connor, 490 U.S. 386, 396 (1989). "Not every push or shove . . . violates the Fourth Amendment, but force is excessive when the officers' actions are not objectively reasonable in light of the facts and circumstances confronting them." Rohrbough v. Hall, 586 F.3d 582, 585 (8th Cir. 2009) (internal quotation marks omitted).

Defendants assert that they are entitled to qualified immunity on plaintiff's § 1983 claim. Qualified immunity shields government officials from suit unless their conduct violated a clearly established right of which a reasonable official would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). While the Supreme Court's "case law do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." White v. Pauly, No. 16-67, 2017 WL 69170, at *4 (U.S. Jan. 9, 2017) (internal quotations and citations omitted). "When properly applied, [qualified immunity] protects all but the plainly

---

[4] The parties have proceeded on the assumption that plaintiff was an arrestee, rather than a pretrial detainee, at the time of their encounter. See Andrews v. Neer, 253 F.3d 1052, 1060–61 (8th Cir. 2001) (noting that there is not a "bright line dividing the end of the arrestee's status and the beginning of the pretrial detainee's status"). Because the "objective reasonableness" standard applies to his excessive force claims regardless of his status, the distinction is not critical to the analysis. Id. ("objective reasonableness" standard applies to excessive force claims of arrestees under the Fourth Amendment and of pretrial detainees under the Fifth and Fourteenth Amendments).

6

incompetent or those who knowingly violate the law." Taylor v. Barkes, 135 S.Ct. 2042, 2044 (2015) (alteration in original) (internal quotation omitted).

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006) (citations and internal quotation marks omitted). Because law enforcement officers "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving," courts evaluate the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396-97. In conducting this analysis, a court must consider the totality of the circumstances. Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir. 2009). Circumstances relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

There are genuine disputes of fact regarding the circumstances and amount of force and used against plaintiff, precluding summary judgment. While there is agreement that the three defendants restrained plaintiff on the floor, there is a dispute as to how he came to be on the floor in the first instance. Defendants claim plaintiff was placed on the floor in a controlled manner when he resisted Siler's efforts to exchange the handcuffs. Plaintiff contends that he was knocked unconscious from a blow to the head while walking toward the nurse's station. There is also a dispute as to the amount of force that was used in restraining

7

plaintiff while he was on the floor. Defendants contend that they used only the amount of force necessary to restrain an arrestee who was struggling and attempting to kick. Plaintiff states that he was unconscious and in handcuffs and thus offering no resistance. Plaintiff's version of the facts, if accepted by a fact-finder, is sufficient to establish an objectively unreasonable use of force in violation of the Fourth Amendment. Furthermore, it was clearly established at the time of this incident that an unresisting, cooperative, restrained arrestee had the right to be free from the application of force that was allegedly used here. See Rohrbough v. Hall, 586 F.3d 582, 587 (8th Cir. 2009) (officer not entitled to qualified immunity on claims he punched plaintiff in the face, took him to the ground face down, landed on top of him and caused him serious injury was illegal).

Defendants argue that they are entitled to summary judgment because plaintiff's description during deposition of the corrections officer that hit him cannot plausibly describe any of them. As noted above, plaintiff states by affidavit that he recognized Siler as the man who hit him when he attended Siler's deposition. Defendants argue that this recognition is not in any way reflected in the transcript of Siler's deposition.[5] This argument goes to the credibility and weight that a fact-finder may give to plaintiff's testimony, factors that cannot be considered on summary judgment. Defendants also argue that plaintiff has admitted he does not know what defendants Jones and Lively did to him while he was unconscious.

---

[5] Defendants do not argue that plaintiff's affidavit is a "sham affidavit" drafted to create a genuine dispute of material fact. Such an argument would not succeed in this case because plaintiff's affidavit is not plainly inconsistent with his deposition testimony. See Blackwell v. DaimlerChrysler Corp., 399 F.Supp.2d 998, 1004 (E.D. Mo. 2005) (finding the "sham affidavit rule" only applies if the affidavit is "plainly inconsistent" with prior testimony); see also Schiernbeck v. Davis, 143 F.3d 434, 438 (8th Cir. 1998) (refusing to consider statements in affidavit plainly inconsistent with deposition testimony in a summary judgment motion).

However, the uncontroverted evidence establishes that they participated in the restraint and that plaintiff sustained serious injuries. A fact-finder could reasonably infer that defendants caused those injuries.

Defendants' motion for summary judgment will be denied with respect to plaintiff's § 1983 claim.

**B.     Assault and Battery**

Under Missouri law, "public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." Davis v. White, 794 F.3d 1008, 1013 (8th Cir. 2015) (quoting Seiner v. Drenon, 304 F.3d 810, 813 (8th Cir. 2002)). A law enforcement officer's decision to use force in the performance of his duties is discretionary rather than ministerial. See id. (citing Davis v. Lambert–St. Louis Int'l Airport, 193 S.W.3d 760, 763 (Mo. banc 2006) ("An act is discretionary when it requires the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued.")). Official immunity "does not apply to discretionary acts done in bad faith or with malice." Id. (quoting Blue v. Harrah's North Kan. City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005)). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Id. (quoting State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 447 (Mo. 1986)). "Bad faith" means "conscious wrongdoing" or "breach of a known duty through some ulterior motive." Id. Plaintiff's version of events on March 20, 2012, if accepted by the fact-finder, would preclude the application of official immunity.

Defendants' motion for summary judgment will be denied with respect to plaintiff's assault and battery claim.

***

For the reasons discussed above,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. # 56] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 17th day of April, 2017.